**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | |
|---|---|
| BOARDS OF TRUSTEES OF THE NORTHWEST INSULATION WORKERS WELFARE TRUST, WESTERN STATES INSULATORS AND ALLIED WORKERS PENSION PLAN, WESTERN STATES INSULATORS AND ALLIED WORKERS INDIVIDUAL ACCOUNT PLAN, WESTERN STATES INSULATORS AND ALLIED WORKERS HEALTH AND WELFARE PLAN, LABOR-MANAGEMENT COOPERATION TRUST, and INSULATION INDUSTRY FUND, | CV 15-09-BLG-SPW-CSO<br><br><br>**FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |
| Plaintiffs, | |
| vs. | |
| THERMAL MECHANICAL INSULATION, LLC, a Montana limited liability company, Montana I.D. No C208363, | |
| Defendant. | |

## I.  Introduction

Plaintiffs are the boards of trustees of six employee trust funds (collectively "Trusts").  They brought this action against Defendant Thermal Mechanical Insulation, LLC ("Thermal") under the Employer Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, et seq., to enforce the terms of certain trust agreements to which Thermal was a party.  *Cmplt. (ECF No. 1) at 4.*[1]  The Trusts sought through their Complaint: (1) to audit Thermal's books and records for the period of January 2011 through July 2013, *id. at 4-5*; and (2) to collect any unpaid fringe benefit contributions, and associated late fees, that Thermal was required to make to the Trusts on behalf of employees performing bargaining unit work, *id. at 3-4*.

On July 2, 2015, Thermal filed a stipulation agreeing that the Trusts have the right to audit its books and records, but reserving its defenses.  *Thermal's Stipulation (ECF No. 20) at 1.*  Thus, the only remaining claim involves whether the Trusts are entitled to collect any unpaid fringe benefit contributions that Thermal was required to make

---

[1]"ECF No." refers to the document as numbered in the Court's Electronic Case Files.  *See The Bluebook, A Uniform System of Citation, § 10.8.3.*  References to page numbers are to those assigned by the electronic filing system.

to the Trusts.  The Trusts also seek liquidated damages and interest on any unpaid contributions, attorney fees, and costs.  *ECF No. 1 at 4-5.*

This Court has jurisdiction under 29 U.S.C. § 1132(a)(3).  Now pending is the Trusts' motion for summary judgment.  *Mtn. for Summary Judgment (ECF No. 29).*  As discussed below, the undersigned recommends that the Court grant the Trusts' motion.

## II.    <u>Background</u>[2]

Thermal is a Montana limited liability company that performs mechanical insulation work, among other jobs.  Effective July 10, 2010, Thermal signed a Compliance Agreement to the Master Labor Agreement dated August 1, 2010 through July 31, 2013, between the International Association of Heat and Frost Insulators and Allied Workers, Local Union 82 ("Local 82"), and the Western Washington Chapter of the Western Insulation Contractors Association.  The agreement is a collective bargaining agreement ("CBA").  Thermal was bound by the CBA's terms.  During its effective dates, the CBA obligated Thermal to submit contributions to the Trusts for the hours worked by its covered employees.

---

[2]The background facts are undisputed except where noted.

Relevant to this action, an audit of Thermal's payroll records from October 2011 through July 31, 2013, revealed that Thermal employed Guadalupe Bujanda ("Bujanda"), Rumaldo Herrera ("Herrera"), and Jessie A. Thomas ("Thomas"). *Trusts' Opening Br. (ECF No. 30) at 5.* The Trusts maintain that all three individuals were journeyman insulators during the relevant time. Thermal disputes that the three individuals were qualified as journeyman insulators. Thermal maintains that it was having ongoing disputes with Local 82 regarding Local 82's ability to supply qualified employees covered by the CBA. Thermal maintains that, when it employed Bujanda, it classified him as a "CI" or "commercial improver" worker for which it was not required to contribute to the Trusts, and hired Herrera and Thomas for non-CBA jobs, for which it was not required to contribute to the Trusts.

Respecting Bujanda, Thermal employed him during the months of May 2012 and June 2012. Bujanda worked 150 hours for Thermal in May 2012, and 32 hours in June 2012. Thermal did not report to the Trusts the 182 hours that Bujanda worked for Thermal during the two months, but Thermal maintains that it was not required to report the hours.

Respecting Herrera, Thermal employed him from July 2011 through March 2013. Thermal reported Herrera's hours to the Trusts and submitted contributions on his behalf. But starting in December 2012, Thermal did not report all of Herrera's hours to the Trusts or submit all of the contributions to the Trusts for the hours Herrera worked. Specifically: (1) in December 2012, Thermal reported and submitted contributions for 37 hours worked when Herrera actually worked 206.5 hours; (2) in January 2013, Thermal reported and submitted contributions for 105 hours worked when Herrera actually worked 140 hours; and (3) in February and March 2013, Herrera worked 159 and 116 hours, respectively, and Thermal did not report or submit contributions to the Trusts for any of those hours. In total, Thermal did not report 479.5 hours for Herrera.

Respecting Thomas, during the months of August 2011 and October 2011 through December 2011, Thermal reported to the Trusts the hours that Thomas worked for Thermal and submitted contributions on his behalf. Thermal also employed Thomas during the months of October 2012 through February 2013. Thermal did not report to the Trusts any of the hours that Thomas worked during that

time and did not submit contributions on his behalf.  In total, Thermal did not report 380 hours for Thomas.

## III.  <u>Summary of Parties' Arguments</u>

The Trusts argue that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law.  They argue that: (1) they have shown that Bujanda, Herrera, and Thomas were journeyman insulators covered under the CBA who performed covered work for which Thermal owes contributions, *Trusts' Opening Br. (ECF No. 30) at 10-12*; (2) Thermal is obligated to submit contributions to the Trusts for all hours that Bujanda, Herrera, and Thomas worked, even if they split working time between positions covered by the CBA and not covered by the CBA, *id. at 13-14*; and (3) under ERISA, Thermal must pay the Trusts liquidated damages on the unpaid contributions, interest on the unpaid contributions, and attorney fees and costs, *id. at 14-17*.

In response, Thermal argues that genuine issues of material fact preclude summary judgment.  *Thermal's Resp. Br. (ECF No. 39) at 11*. Thermal argues that the Trusts have failed to demonstrate that: (1) Bujanda, Herrera, and Thomas were ever registered or listed with

Local 82, *id. at 11-12*; (2) that they were qualified journeyman mechanics/insulators during the relevant time periods for which the Trusts argue that Thermal owed contributions, *id. at 12-14*; and (3) that the three employees were performing work covered by the CBA, *id*.

Thermal also argues that the union, Local 82, had not fulfilled its obligation under the CBA to provide qualified journeymen mechanics/insulators. This failure, Thermal argues, forced it to find and hire employees and relieved it of its obligation to make contributions on behalf of those workers. *Id. at 2-10*.

Finally, Thermal argues, even assuming that the three employees were covered by the CBA, Thermal is not required to submit contributions for all hours worked by the employees. *Id. at 15-16*. Rather, Thermal argues, the Trusts misplace reliance on cases holding that employers must contribute for all hours worked even if an employee splits time between CBA-covered and non-CBA jobs because those cases interpreted completely different agreements than those at issue in this case. *Id*.

In reply, the Trusts argue that: (1) Thermal cannot use as a defense to the Trusts' claim for contributions any dispute that Thermal

may have had with Local 82 because contract defenses do not apply in actions brought by trust funds for collection of unpaid contributions, *Trusts' Reply Br. (ECF No. 46) at 2-4*; (2) Thermal's evidence actually supports the Trusts' position that Bujanda, Herrera, and Thomas are journeyman mechanics because Thermal's contribution history demonstrates that it contributed on behalf of these individuals as journeyman mechanics during the relevant period, *id. at 5-6*; (3) whether the three employees were union members or properly qualified as journeymen is legally irrelevant because the CBA covers work performed, not union membership or journeyman status, as long as they performed bargaining unit work, which they did in this case, *id. at 7-8*; (4) Thermal is responsible for submitting contributions for all hours worked by employees, even if the employees performed work not covered by the CBA, *id. at 8-11*; (5) contributions received from Thermal will be credited to the employees' accounts, contrary to Thermal's belief that the money will not be used for the benefit of Thermal's former employees, *id. at 11-12*; and (6) the Court should strike certain portions of David Harmala's declaration filed in support of Thermal's opposition to the motion at hand because they lack

support, are self-serving, or contain inadmissible hearsay, *id. at 12-13*.

IV. **Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party.  *Id*. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue of fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "[T]he mere existence of some alleged factual dispute

between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no

genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.

## V.     <u>Discussion</u>

The Trusts' claim to collect any unpaid fringe benefit

contributions that Thermal was required to make falls under 29 U.S.C.

§ 1145 of ERISA, which states:

> Every employer who is obligated to make contributions to a
> multiemployer plan under the terms of the plan or under the
> terms of a collectively bargained agreement shall, to the extent
> not inconsistent with the law, make such contributions in
> accordance with the terms and conditions of such plan or such
> agreement.

Thus, to establish a violation of 29 U.S.C. § 1145, the Trusts must

demonstrate that:  (1) they are multiemployer plans; (2) the CBA

obligated Thermal to make the required contributions; and (3)

defendant failed to make the contributions.  *Trustees of Eighth Dist.*

*Elec. Pension Fund v. Gietzen Elec., Inc.*, 898 F.Supp.2d 1193, 1198 (D.

Idaho 2012) (citation omitted).

Here, it is undisputed that the Trusts are multiemployer plans as

contemplated under ERISA.[3]  The parties also agree that Thermal did

not pay the subject contributions at issue.  Thus, the only dispute is

whether Thermal was obligated to pay such contributions.  For the

reasons discussed below, the Court concludes that Thermal was so

obligated, and that the Trusts are entitled to summary judgment.

As noted above, Thermal's principal arguments opposing the

Trusts' motion are that: (1) the union, Local 82, was not fulfilling its

obligations under the CBA to provide qualified journeymen insulators;

and (2) the Trusts have failed to show that Bujanda, Herrera, and

───────────────

[3]Respecting each plaintiff's status, the parties stipulate as follows:

The Northwest Insulation Workers Welfare Trust, Western States Insulators and Allied Workers Pension Plan, Western States Insulators and Allied Workers Individual Account Plan, Western States Insulators and Allied Workers Health and Welfare Plan are "multiemployer plans" as defined in Section 4001(a)(3) of ERISA, 29 U.S.C. § 1301(a)(3).  These multiemployer trusts provide health, pension and training benefits to employees of signatory employers, generally, insulators and allied workers, and their dependents and survivors.
The Labor-Management Cooperation Trust and Insulation Industry Fund are trust funds created under [section] 302(c)(9) of the Labor Management Relations Act of 1947 (LMRA), as amended, 29 U.S.C. § 186 (c)(9), established for one or more of the purposes set forth in section 5(b) of the Labor Management Cooperation Act of 1978

*Statement of Stipulated Facts (ECF No. 7) at 2-3.*

Thomas were qualified journeymen registered with Local 82. These deficiencies, Thermal argues, relieve it of its obligation to pay the contributions required under the CBA. The Court is not persuaded.

As an initial matter, Thermal acknowledges that it was bound by the terms of the CBA and that, during its effective dates, the CBA obligated Thermal to submit contributions to the Trusts for the hours worked by its covered employees. *Thermal's Stmt. of Disputed Facts (ECF No. 40 at 2-3)*. Thermal further acknowledges that it employed Bujanda, Herrera, and Thomas at times during the relevant period. *Id. at ¶¶ 7, 8, and 13*. And, Thermal acknowledges, it did not submit contributions to the Trusts for all of the hours worked by each man. *Id. at ¶¶ 7, 10, and 15*. Thermal's stance that it was not required to submit contributions is based on its positions that: (1) Local 82 was not providing qualified journeymen insulators; (2) the three employees were not qualified as journeyman mechanics/insulators; and (3) the three employees were not union members of Local 82. None of these arguments is persuasive.

First, Thermal's ongoing disputes with Local 82 regarding Local 82's ability to supply qualified employees is not a proper basis to excuse

Thermal's obligation to contribute funds to the Trusts. And, Thermal cannot use Local 82's alleged breach of the CBA as a defense in this action. In *Southwest Administrators, Inc. v. Rozay's Transfer*, the Ninth Circuit explained:

> For reasons of public policy, traditional contract law does not apply with full force in actions brought under [ERISA] to collect delinquent trust fund contributions. In recognition of the fact that millions of workers depend upon employee benefit trust funds for their retirement security, Congress and the courts have acted to simplify trust fund collection actions by restricting the availability of contract defenses, which make collection actions unnecessarily cumbersome and costly.

791 F.2d 769, 773 (9th Cir. 1986) (citations omitted). "In the Ninth Circuit, only those defenses demonstrating illegality of the contributions or striking at the heart of the underlying collective bargaining agreement as void *ab initio* (as opposed to, merely, voidable), are available when contesting delinquency actions such as this." *Gietzen*, 898 F.Supp.2d at 1200 (*citing Southwest Administrators*, 791 F.2d at 773-73).

In the case at hand, Thermal does not argue that the contributions the Trusts seek are illegal. It also does not argue that the CBA is void by Local 82's alleged failure to provide qualified journeymen insulators. Based on the foregoing authority, Thermal

cannot rely on Local 82's alleged failure to perform under the CBA as a basis for withholding contributions. *Id.* (rejecting argument that employer not required to contribute funds under collective bargaining agreement because union allegedly failed to provide qualified electricians because "while potentially available in a typical contract dispute, [the argument] is not recognized under ERISA's more constrained framework, driven by public-policy intended to favor benefit protection."). Thus, Thermal's first argument fails.

Second, the Court concludes that Thermal also cannot avoid submitting contributions based on its position that the three employees were not qualified as journeyman mechanics/insulators. The CBA provides that Thermal must contribute for all employees who perform insulation work as follows:

> This agreement covers the rates of pay, rules and working conditions of all employees engaged in the preparation and physical distribution on the job site, and application of pipe and boiler coverings, insulation of hot surfaces, ducts, flues, etc. Also the covering of cold piping and circular tanks and equipment connected with it, fire and pressure seals, fire stops of mechanical, electrical penetrations and all other work included in the trade jurisdictional awards to the union and standing agreements with other trades.
> This includes alterations and repairing of work similar to the above and the use of all materials for the purpose mentioned.

All fabricated work done in the employer's shop covered under the scope of this agreement shall be performed by employees under the terms and conditions of this agreement. It shall have the authorized Asbestos Workers International Union label, or Asbestos Workers covered by this agreement shall not be required to handle such material.

*Master Labor Agreement, Article II Work Covered (ECF No. 34-3) at 5.*

The CBA does not require as a precondition to employer contributions to the Trusts that employees hold a particular experience status or classification. Rather, the CBA unambiguously applies to "all employees" performing bargaining unit work. *See Pierce County Hotel Employees and Restaurant Employees Health Trust v. Elks Lodge, B.P.O.E. No. 1450*, 827 F.2d 1324, 1327 (9th Cir. 1987) (rejecting argument that CBA requiring contributions for "any person performing work covered by this agreement" was ambiguous).

And, Thermal has neither persuasively argued nor presented evidence indicating that Bujanda, Herrera, and Thomas were not performing bargaining unit work. On the contrary, the Trusts have presented evidence that the three employees were performing bargaining unit work during the relevant time periods. *See Declaration of Jessie Thomas (ECF No. 35) at 2-3* (stating that during time Thermal

employed him, Thomas "only performed work covered by the Insulator's [sic] collective bargaining agreement[ ]" and that he "saw Rumaldo Herrera performing insulation work" during the months of October 2012 through February 2013); *Declaration of Rumaldo Herrera (ECF No. 49) at 2-3* (stating that at all times when he was employed by Thermal, he was a journeyman-foreman insulator and from December 2012 through March 2013 he worked as a journeyman-foreman insulator for Thermal performing insulation work and supervising man-hours); *Declaration of Michaeal Loberg (ECF No. 34) at 2-3* (stating that Bujanda was dispatched to Thermal to perform bargaining unit work during the relevant time and that Bujanda, Herrera, and Thomas all were journeyman insulators when they worked for Thermal). Because the undisputed evidence of record shows that the three employees were performing bargaining unit work during the relevant times, Thermal's second argument fails.

Third, the Court is unpersuaded by Thermal's argument that it is relieved from making contributions to the Trusts because the three employees were not union members of Local 82. As noted above, the CBA covers employees performing insulation work and does not require

union membership as a prerequisite for employer contributions to the Trusts. *See Master Labor Agreement, Article II Work Covered (ECF No. 34-3) at 5.* Also, the CBA's so-called "recognition clause" provides that Thermal "recognizes the union as the sole and exclusive bargaining representative of all employees performing work over which the union has jurisdiction," which is "defined by the Building and Construction Trades Department of the American Federal of Labor." *Master Labor Agreement, Article VIII Union Security & Resident Employee & Hiring Arrangement (ECF No. 34-3) at 7.* "The presence in the agreement of a recognition clause designating the union as the exclusive bargaining agent for all employees indicates that fringe benefit contributions are required for both union and non-union members." *Trustees of the Southern California IBEW-NECA Pension Trust Fund v. Flores*, 519 F.3d 1045, 1047 (9th Cir. 2008) (citations omitted). For these reasons, Thermal's third argument fails.

Thermal finally argues that, if the Court determines that the employees are covered by the CBA, Thermal is not required to submit contributions for non-CBA hours that the employees worked. *Thermal's Resp. Br. (ECF No. 39) at 15-16.* Thermal is mistaken.

First, as noted, Thermal has neither persuasively argued nor presented evidence from which a reasonable inference could be drawn that the three employees were not performing bargaining unit work at all relevant times. And, as discussed above, the Trusts have presented evidence that the three employees were performing bargaining unit work during the relevant time periods. For this reason alone, Thermal's argument fails.

Second, even if the employees did perform both bargaining unit work and non-CBA work, Thermal nevertheless must contribute to the Trusts. Under Ninth Circuit authority, when an employee splits working time between work covered by a collective bargaining agreement and work not covered by the agreement, the employer is required to contribute for all hours that the employee works or for which the employer pays the employee. *See Board of Trustees of Cement Masons and Plasterers Health and Welfare Trust v. Whitewater Engineering Corp.*, 64 Fed.Appx. 39, 40 (9th Cir. 2003); *Operating Engineers Pension Trusts v. B & E Backhoe, Inc.*, 911 F.2d 1347, 1351 (9th Cir. 1990) (enforcing split-time rule requiring contributions for employees performing both covered and non-covered work); *Operating*

*Engineers Pension Trusts v. A-C Company,* 859 F.2d 1336, 1341 (9th Cir. 1988) (same).  Thus, Thermal must make contributions for all hours worked even if the work performed is split between covered and non-covered work.

For all of the foregoing reasons, the Trusts are entitled to summary judgment.  Consequently, under 29 U.S.C. § 1132(g)(2), the Trusts are entitled to: (1) unpaid contributions from Thermal on behalf its employees for the audit period of October 2011 through July 31, 2013, as discussed above; (2) interest on the unpaid contributions; (3) an amount equal to the greater of interest on the unpaid contributions or liquidated damages under the CBA not in excess of 20 percent of the unpaid contributions; and (4) reasonable attorney's fees and costs.

With their opening brief in support of their summary judgment motion, the Trusts have provided the declarations of Jonathon Loflin, the Trusts' auditor, and Bill Boyle, the Trusts' Account Manager, to support their claims for:

(1) $16,314.01 in unpaid employee benefit contributions;

(2) $3,730.51 in liquidated damages;

(3) $6,618.09 in interest (updated through May 6, 2016); and

(4) $3,485.00 in accounting fees for the relevant period.

*See Declaration of Jonathon Loflin (ECF No. 32) and Declaration of Bill Boyle (ECF No. 33).* The Trusts also have provided the declaration of Noelle Dwarzski, the Trusts' counsel, to support their claim for $27,662.50 in attorneys' fees and $679.00 in costs. *See Declaration of Noelle Dwarzski (ECF No. 36).* Thus, the Trusts' total award claimed is $58,489.11.

Thermal has not contested these amounts despite having had the opportunity to do so in responding to the Trusts' summary judgment motion.

## VI. <u>Conclusion</u>

Based on the foregoing, IT IS RECOMMENDED that the Trusts' motion for summary judgment (*ECF No. 29*) be GRANTED, and that the Court award the Trusts $58,489.11 as set forth above.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendation must be filed with the Clerk of Court and copies

served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 19th day of July, 2016.

/s/ Carolyn S. Ostby
United States Magistrate Judge